UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROOSEVELT BEATTY, JR.,

Defendant.

No. 2:25-cr-00158-TLN

**ORDER**

This matter is before the Court on Defendant Roosevelt Beatty, Jr.'s ("Defendant") Motion to Suppress and request for a *Franks* hearing. (ECF No. 21.) The Government filed an opposition, and Defendant filed a reply.[1] (ECF Nos. 26, 28.) For the reasons set forth below, the Court DENIES Defendant's Motion to Suppress and request for a *Franks* hearing.

///

///

///

[1] Under Local Rule 430.1(f), "[a]ny reply shall be served and filed not more than 4 days after the opposition is due." E.D. Cal. L.R. 430.1(f). The Government filed its opposition on February 26, 2026. (ECF No. 26.) Defendant did not file his reply until November 5, 2026. (ECF No. 28.) The Court need not decide whether to excuse Defendant's untimely reply because, even considering its arguments, the Court concludes Defendant has not established a basis for suppression or a *Franks* hearing as discussed below.

## I. Factual and Procedural Background

On May 22, 2025, Sacramento County Superior Court Judge Benjamin D. Galloway issued a warrant authorizing a search of a residence on Bartlett Lane, Defendant's person, and a white 2024 Dodge Ram 1500 ("the Dodge Ram") for methamphetamine, fentanyl, paraphernalia, cash, records of drug sales, and indicia of dominion and control. (ECF No. 26-1 at 1–7.) The warrant also authorized officers to seize any cellular telephones in Defendant's possession pending a separate warrant to search their contents. (*Id.* at 4–5.) Sacramento Police Department Detective Steven Andreazzi ("Det. Andreazzi") submitted the supporting affidavit. (*Id.* at 8–25.) The affidavit set forth the following facts.

On September 25, 2024, a Sacramento police sergeant saw Defendant standing beside a parked pickup truck in a strip mall lot. (*Id.* at 14.) Defendant entered the driver's seat, and another man entered the front passenger seat. (*Id.*) Both men leaned toward the center of the passenger compartment and looked down at something together for thirty seconds to a minute before the passenger left in his own vehicle. (*Id.*) The sergeant, who has surveilled at least one hundred narcotics meetings, believed the encounter was consistent with a short-stay narcotics transaction. (*Id.*) A records check showed Defendant's prior arrests for offenses involving possession for sale, sale, or transportation of controlled substances under California Health and Safety Code §§ 11351.5, 11352, 11378, and 11379. (*Id.*)

On April 25, 2025, Det. Andreazzi was surveilling a Motel 6 known for drug activity. (*Id.* at 15.) He saw a man standing near a staircase while several people approached him, spoke briefly, and walked away without anything changing hands. (*Id.*) The man then walked to a nearby parking lot where Defendant sat in the Dodge Ram. (*Id.*) Defendant got out, opened the rear door, reached inside, and returned to the driver's seat. (*Id.*) The man got into the passenger seat, stayed about three minutes, and walked back to the Motel 6. (*Id.*) Det. Andreazzi then watched the man sell drugs to several of the people who had approached him earlier. (*Id.* at 15–16.) Officers arrested the man and two of his buyers. (*Id.* at 16.) The man had about two grams of methamphetamine in his pocket and $268 in small bills, and he had thrown away a bag holding about ten more grams of methamphetamine. (*Id.*) Each buyer had about half a gram of fentanyl

and admitted buying it from the man minutes earlier. (*Id.* at 16–17.) Rental records identified Defendant as the renter of the Dodge Ram. (*Id.* at 17.) Det. Andreazzi concluded Defendant had supplied the man with drugs immediately before the sales. (*Id.*)

Officers followed Defendant on April 26, May 7, and May 16, 2025. (*Id.* at 17–20.) On May 7, Defendant left the residence on Bartlett Lane and then drove to several locations across Sacramento, meeting different people for a few minutes at a time. (*Id.* at 18.) On May 16, Defendant searched the back seat of the Dodge Ram and met with one of the men officers had observed during the May 7 surveillance. (*Id.* at 19.) Defendant and the man spoke for several minutes before the man walked away. (*Id.*) The man put a small object in his pocket before entering his vehicle. (*Id.*) Defendant made two more brief stops, returned to the residence on Bartlett Lane, and then drove to a restaurant parking lot, where he sat in another person's car for less than a minute before leaving. (*Id.* at 19–20.) Det. Andreazzi stated this pattern of brief meetings at multiple locations was consistent with drug sales. (*Id.* at 18, 20.)

The affidavit also tied Defendant to the residence on Bartlett Lane. Defendant activated a utility account for the residence in August 2024 and is the only customer listed on the account. (*Id.* at 19.) License plate readers recorded the Dodge Ram passing through the residence complex's driveway late at night and early each morning. (*Id.* at 20.) Security footage showed Defendant entering the building with a key card. (*Id.*) Det. Andreazzi stated, based on his training and experience, people who sell drugs away from their home "will carry only that portion for which they know they have a customer" and "will keep the majority of their narcotics/drugs hidden at their residence, vehicles, and/or 'stash locations.'" (*Id.*) He added drug sellers "will often keep large amounts of cash on the premises," "[t]he amount of one's profits will be a function of the amount of controlled substances one sells," and sellers "tend to consistently make large profits." (*Id.* at 21.) The affidavit incorporated a sealed attachment, which contains statements from a confidential informant describing Defendant as a drug dealer. (*Id.* at 10–12; ECF No. 26 at 3.)

On May 23, 2025, officers searched the residence on Bartlett Lane ("the residence") and found approximately 500 grams of cocaine, 500 grams of methamphetamine, 100 grams of

heroin, 400 grams of fentanyl, more than $14,303 in cash, and mail and a California driver's license in Defendant's name. (ECF No. 26 at 4 (citing ECF No. 1).)

On July 10, 2025, a grand jury returned an Indictment charging Defendant with possession with intent to distribute methamphetamine, possession with intent to distribute cocaine, possession with intent to distribute cocaine base, possession with intent to distribute heroin, possession with intent to distribute fentanyl, and distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1). (ECF No. 12.) Defendant filed the instant motion to suppress and request for a *Franks* hearing. (ECF No. 21.)

## II. Standard of Law

The Fourth Amendment provides in relevant part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists where, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The issuing magistrate must make "a practical, common-sense decision," and the reviewing court's duty "is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238–39. "[A] magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236 (internal quotation marks omitted). "In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1978). In determining whether a search warrant is supported by probable cause, "issuing judges may rely on the training and experience of affiant police officers." *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).

## III. Analysis

Defendant moves to suppress all evidence discovered pursuant to the warrant that authorized the search and seizure of Defendant's cell phone and his residence on three grounds. First, Defendant alleges the affidavit failed to establish a nexus between Defendant's suspected drug dealing and his residence. (ECF No. 21 at 4–5.) Second, the informant information in the

sealed attachment to the affidavit was undated and therefore stale. (*Id.* at 5–6.) Third, the affidavit contained a reckless misstatement and omission warranting a *Franks* hearing. (*Id.* at 6.) The Court addresses each argument in turn.

A. Nexus to the Residence

Defendant concedes probable cause existed "to believe he was selling small amounts of drugs out of a vehicle" but argues "there was no probable cause to believe that he stored the drugs at his residence." (ECF No. 28 at 1.) He argues the affidavit established only some possibility of storage at his residence because the officer stated that in his experience drug dealers keep drugs hidden "at their residence, vehicle, and/or 'stash locations.'" (*Id.* at 2; ECF No. 21 at 4–5.) He also argues that officers observed only hand-to-hand sales worth less than $100 and therefore had no basis to expect substantial drug proceeds at his residence. (ECF No. 21 at 4.) In opposition, the Government argues the investigation established a nexus between Defendant and his residence through observations of suspected dealing, security footage, license plate data, and utility records. (ECF No. 26 at 4–6.)

"When a magistrate judge issues a search warrant for a residence, he must find a 'reasonable nexus' between the contraband sought and the residence." *Chavez-Miranda*, 306 F.3d at 978 (citation omitted). "In making this determination, a magistrate judge need only find that it would be reasonable to seek the evidence there." *Id.* "Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986). The magistrate judge "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Id.* "In the case of drug dealers, evidence is likely to be found where the dealers live." *Id.* The magistrate judge "need not determine that the evidence sought is *in fact* on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place," but "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990) (citation modified). The Court "may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found."

*United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987).

The affidavit established a reasonable nexus between Defendant's drug dealing and his residence. The affidavit here supplied three categories of facts supporting the inference that Defendant's residence likely contained evidence of drug dealing. First, the affidavit established probable cause to believe Defendant was selling drugs, a point Defendant now concedes in reply. (ECF No. 28 at 1.) Det. Andreazzi watched a man surrounded by prospective buyers fail to complete any sale, meet with Defendant in the Dodge Ram for three minutes after Defendant retrieved something from the rear seat, and then complete multiple sales within minutes of returning. (ECF No. 26-1 at 15–16.) Second, the affidavit established Defendant lived at the residence because he was the sole utility customer, he entered the building with a key card, and his vehicle passed through the complex's driveway nightly and each morning. (*Id.* at 19–20.) Third, the affidavit tied Defendant's movements to the residence in a manner consistent with storing drugs there. On May 7, Defendant left the residence before conducting a series of brief meetings across Sacramento. (*Id.* at 18.) On May 16, Defendant conducted brief meetings, returned to the residence for a few minutes, and then drove directly to another one-minute meeting inside a parked vehicle. (*Id.* at 19–20.) Combined with Det. Andreazzi's experience-based statement that drug sellers carry only what a known customer will buy and keep the remainder at their residence or in their vehicles (*id.* at 20), these facts gave the issuing magistrate a substantial basis to conclude it would be reasonable to seek the evidence at the residence.

The Ninth Circuit upheld a residence warrant on closely analogous facts in *Chavez-Miranda*. There, agents observed the defendant drive to an apartment, enter a gated lot using a remote device, and subsequently call an informant to state he had heroin available for purchase. 306 F.3d at 977. Moreover, the electric utility at the apartment was in the defendant's name. *Id.* The Ninth Circuit held the defendant's travel "to and from the [apartment] at times and in a manner that appeared consistent with heroin being stored there" created "a substantial nexus between the narcotics trafficking and the storing of heroin" at the apartment. *Id.* at 978–79. This Court applied the same reasoning in *United States v. Romero*, 382 F. Supp. 3d 966, 988–89 (E.D. Cal. 2019), upholding a residence warrant where the suspected supplier repeatedly met a dealer

shortly before sales and traveled to and from his residence around those meetings. The facts here follow the same pattern: a suspected drug dealer; a residence confirmed by utility records and key-card access; and trips to and from the residence between brief meetings.

Defendant's argument regarding Det. Andreazzi's statement that drug dealers keep drugs hidden "at their residence, vehicle, and/or 'stash locations'" misapprehends the governing standard. (ECF No. 28 at 2.) Defendant reads the affidavit's reference to "stash locations" as conceding some dealers store drugs elsewhere, and argues the affidavit therefore showed only a possibility, not a probability, of finding drugs at the residence. (*Id.*) But probable cause does not require the affiant to exclude alternative storage locations. The magistrate judge "need not determine . . . that the evidence is more likely than not to be found where the search takes place." *Terry*, 911 F.2d at 275. In *Terry*, the affidavit rested on two bases alone: methamphetamine found in the defendant's truck forty miles from his home, and the affiant's experience "that methamphetamine drug traffickers keep drugs, paraphernalia, records and money in their homes or adjoining structures." *Id.* The Ninth Circuit held this showing "provided the magistrate with 'a reasonable ground to believe' that contraband might be found in [the defendant's] residence." *Id.* at 275–76. The affidavit here contained the same two bases and more, including surveillance placing Defendant at the residence between suspected drug deals. Defendant's related contention that the warrant would equally support a search of "any other building he entered that week" (ECF No. 28 at 2) ignores these facts because officers did not observe Defendant enter any other building with a key card, subscribe to utilities there, or return there nightly.

Defendant's argument regarding the scale of his dealing also fails. Defendant contends only "large sums" of cash would have evidentiary value, and the surveillance showed only sales worth less than $100. (ECF No. 21 at 4; ECF No. 28 at 3.) The warrant, however, authorized seizure of methamphetamine, fentanyl, scales, packaging materials, buyer and seller lists, and indicia of occupancy, not merely cash. (ECF No. 26-1 at 3–4.) Each of these items is evidence of possession for sale regardless of the quantity sold or the profit earned. Moreover, the affidavit supported an inference Defendant operated above the retail level. He supplied a dealer who then sold to multiple customers, and that dealer was found with approximately twelve grams of

methamphetamine shortly after their meeting. (*Id.* at 15–16.) Defendant's characterization of the seized quantity as "3 g" (ECF No. 21 at 2) does not reflect the affidavit, which describes two grams on the dealer's person and an additional ten grams in a discarded bag. (ECF No. 26-1 at 16.) The affidavit also qualified its statements about profits by acknowledging "[t]he amount of one's profits will be a function of the amount of controlled substances one sells." (*Id.* at 21.) Judge Galloway was entitled to credit Det. Andreazzi's experience on this point. *Chavez-Miranda*, 306 F.3d at 978.

Accordingly, the Court finds the affidavit established a reasonable nexus between Defendant's drug dealing and the residence, and Judge Galloway had a substantial basis to find probable cause.

B. Staleness

Defendant argues the warrant is stale because the informant information in the sealed attachment "was not dated" and may have come from the period of Defendant's prior drug conviction. (ECF No. 21 at 3, 5; ECF No. 28 at 2.) Defendant relies on *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968), and *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1991), to argue that undated or long-past information cannot support probable cause. (ECF No. 21 at 5–6.) In opposition, the Government contends the officers "observed the defendant engaging in a pattern of drug distribution less than a week before the search warrant was drafted and executed," and probable cause exists without reference to the sealed attachment. (ECF No. 26 at 6, 9.)

The information supporting a warrant must not be stale. "[T]he mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (quoting *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988)). Courts "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *Id.* at 745–46 (quoting *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993)).

The information supporting the warrant was not stale. The unsealed affidavit described surveillance of Defendant on April 25, April 26, May 7, and May 16, 2025. (ECF No. 26-1 at 15–20.) Judge Galloway issued the warrant on May 22, 2025, six days after the final

surveillance, and officers executed it the following day. (*Id.* at 6; ECF No. 26 at 4.) A six-day gap between the last observation of ongoing drug sales and the issuance of a warrant does not approach the ten-month delay in *Durham*, 403 F.2d at 194, or the twenty-month delay in *Weber*, 923 F.2d at 1344–45. The one dated event further in the past, the September 2024 meeting, was corroborated by the fresh observations in April and May 2025 and served only to show the activity was continuing rather than isolated.

Defendant's staleness argument rests entirely on the sealed informant information, but the Court need not rely on that information to find probable cause. Where an affidavit contains both challenged and unchallenged material, the warrant stands if "the untainted portions contain a sufficient showing of probable cause to render the warrant valid." *United States v. Driver*, 776 F.2d 807, 812 (9th Cir. 1985). As discussed above, the unsealed surveillance and residency facts independently supplied probable cause. Even without the sealed attachment, the affidavit contained timely information sufficient to establish probable cause.

Accordingly, the Court finds the warrant was not stale.

C. *Franks* Hearing

Defendant requests a *Franks* hearing on two grounds. First, Defendant argues the affiant's statement that drug sellers "amass huge sums of illicit money" is "completely false" as applied to street-level dealers because "it is very rare for any except the highest level drug dealers to earn large profits." (ECF No. 21 at 3; ECF No. 28 at 3.) Second, Defendant argues the affiant recklessly omitted Defendant's prior drug-sales conviction, which "likely created a false impression that the informants were discussing recent information," and the affiant "should have asked the informant to clarify what time period he was talking about." (ECF No. 21 at 3; ECF No. 28 at 2–3.) In opposition, the Government argues Defendant provides no "detailed offer of proof," his "cursory statements" do not show intentional or reckless conduct, and any misstatement or omission was immaterial because the surveillance alone supplied probable cause. (ECF No. 26 at 8–9.)

A defendant may challenge the veracity of a warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978). To obtain an evidentiary hearing, the defendant must make a "substantial

preliminary showing" of two elements: (1) the affiant "intentionally or recklessly made false or misleading statements or omissions in support of the warrant," and (2) "the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (quoting *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)) (internal quotation marks omitted). "[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine," and allegations of deliberate falsehood or reckless disregard "must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. "Allegations of negligence or innocent mistake are insufficient." *Id.* Reckless disregard requires "a high degree of awareness of probable falsity." *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998). As to materiality, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72. For omissions, "[t]he key inquiry is 'whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions.'" *Perkins*, 850 F.3d at 1119 (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)).

Defendant has not made the substantial preliminary showing Franks requires on either element. As a threshold matter, Defendant's allegations are "accompanied by [no] offer of proof." *Franks*, 438 U.S. at 171. Defendant submits no declaration, no document, and no sworn statement; he relies solely on counsel's assertions in the briefing. (*See* ECF Nos. 21, 28.) Such "bare assertion[s]" fall short of the required showing. *Chavez-Miranda*, 306 F.3d at 979.

Defendant also fails to show Det. Andreazzi intentionally or recklessly misstated or omitted information. The statement regarding dealers' profits is an opinion drawn from Det. Andreazzi's training and experience, and the affidavit itself qualified it by noting profits depend on the volume sold. (ECF No. 26-1 at 21.) The Ninth Circuit has held an affiant's experience-based conclusion is not reckless merely because further investigation might have undermined it. *See United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987) ("the most that can be said of the officers' failure to further investigate . . . is that they were negligent."); *see also Romero*, 382

F. Supp. 3d at 977–78 (applying *Burnes*). Defendant therefore fails to establish that the challenged statements were false. Moreover, Defendant offers nothing beyond counsel's generalization about presentence reports in other cases to show Det. Andreazzi possessed "a high degree of awareness of probable falsity." *Senchenko*, 133 F.3d at 1158. The omission argument fares no better. The unsealed affidavit disclosed Defendant's arrest history for four drug-sales offenses under the California Health and Safety Code. (ECF No. 26-1 at 14.) Judge Galloway was therefore aware of Defendant's prior involvement with drug sales when evaluating the informant information, and the omission of the formal conviction did not create the "false impression" Defendant posits. Defendant identifies nothing suggesting Det. Andreazzi knew the informant information was stale and concealed it. At most, Defendant faults the affiant for failing to ask a clarifying question, which "is not sufficient to warrant a Franks hearing." *Burnes*, 816 F.2d at 1358 (quoting *Franks*, 438 U.S. at 170).

The Court need not determine whether the affiant acted recklessly because neither the alleged misstatement nor the omission was material. Even after the Court sets aside the statement regarding large profits and the entire sealed attachment and supplements the affidavit with Defendant's 2014 conviction, the affidavit still describes Defendant supplying a dealer immediately before multiple sales, a pattern of brief meetings across three additional days of surveillance, trips to and from the residence between those meetings, and Defendant's residency confirmed by utility records and key-card access. (ECF No. 26-1 at 14–20.) Those facts, combined with the affiant's experience regarding where sellers store their supply, establish probable cause for the reasons stated above. *See Terry*, 911 F.2d at 275–76. Adding the prior conviction would strengthen, not weaken, the inference Defendant was engaged in drug sales. Because "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171–72.

Accordingly, the Court DENIES Defendant's request for a *Franks* hearing.[2]

---

[2] Defendant's motion also references the seizure of his cell phone (ECF No. 21 at 1), but Defendant develops no argument directed to the phone, and the warrant authorized only its seizure pending a separate warrant to search its contents. (ECF No. 26-1 at 4–5.) The Court declines to address an undeveloped argument. Defendant's request for "leave to supplement his

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress and request for a *Franks* hearing are DENIED. (ECF No. 21.) The Court sets this matter for a status conference on December 3, 2026, at 9:30 a.m. in Courtroom 2.

IT IS SO ORDERED.

DATE: November 17, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

arguments upon further review of the sealed portion of the warrant" (ECF No. 21 at 6) is also DENIED as moot.